**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail:  greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN MEEHAN, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MAELYS COSMETICS USA INC. d/b/a MAELYS,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

1    Plaintiff Karen Meehan ("Plaintiff") brings this action on behalf of herself and all others

2    similarly situated against Defendant Maelys Cosmetics USA Inc. d/b/a Maelys ("Defendant" or

3    "Maelys").  Plaintiff makes the following allegations pursuant to the investigation of her counsel

4    and based upon information and belief, except as to the allegations specifically pertaining to

5    herself, which are based on personal knowledge.

6    <u>**NATURE OF THE ACTION**</u>

7    1.    This is a putative class action lawsuit on behalf of purchasers of the B-FLAT Belly

8    Firming Cream, B-THICC Booty Enhancing Mask, and B-TIGHT Lift & Firm Buttocks Mask (the

9    "Products").

10    2.    Specifically, Defendant represents and warrants that these cosmetic skin care

11    Products are "clinically proven" to, among other things, reduce cellulite, eliminate cellulite (*i.e.*,

12    "no more cellulite"), deliver results similar to a "tummy tuck" surgical procedure, flatten out /

13    reduce stretch marks and eliminate flabby skin (the "Advertised Benefits").  Defendant also utilizes

14    uniform false and deceptive advertising tactics to promote the Products online and at retail

15    locations, including the use of photoshopped "before-and-after" images to lure in vulnerable and

16    unsuspecting consumers.  These outrageous false advertising tactics have worked, propelling

17    Defendant's sales of the Products as best sellers online and at national retail stores.

18    3.    Unfortunately for consumers, the Products are neither "clinically proven" nor

19    capable of providing the Advertised Benefits.

20    4.    Accordingly, Plaintiff brings claims against Defendant individually and on behalf of

21    a Nationwide Class and California Subclass of all others similarly situated for (1) violation of

22    California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; (2) violation of

23    California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3) violation of

24    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (4) Breach of

25    Express Warranty; (5) Breach of Implied Warranty; and (6) Unjust Enrichment.

26    <u>**PARTIES**</u>

27    5.    Plaintiff Karen Meehan is a citizen of California residing in Concord, California.

28

On August 22, 2024, Plaintiff purchased the Products from Amazon.com while she was in California. Prior to her purchase, Ms. Meehan reviewed the warranties and representations made by Defendant on its Amazon sales page, including that the B-Tight Product is clinically proven to "reduce cellulite," that the B-Flat Product is clinically proven to provide results "like a tummy tuck," "flatten out stretch marks," and eliminate "flabby skin," and that the B-Thicc Product is clinically proven to "firm the skin" and "improve elasticity." These warranties and representations were also accompanied by images showing dramatic "before-and after" results. Prior to her purchase, Plaintiff also viewed advertisements posted by Defendant on its own website, maelyscosmetics.com, Facebook and TikTok pages. In all, Plaintiff understood those representations and warranties to mean that the Products could provide the Advertised Benefits. Plaintiff relied on those representations and warranties in choosing the Products over comparable products and skin treatments to provide skin benefits and in choosing to purchase the Products. Even though Plaintiff used the Products as directed, she did not receive the Advertised Benefits. Plaintiff would not have purchased the Products or would have paid less for them had she known that Defendant's representations and warranties with regard to the Advertised Claims were not true. In making her purchase, Plaintiff Meehan paid a substantial price premium due to the false and misleading Advertised Benefits. However, Plaintiff Meehan did not receive the benefit of her bargain because the Products were, in fact, not capable of providing the Advertised Benefits.

6.     Plaintiff and the members of the Classes who purchased the Products did so relying on Defendant's claims that the Products provided the Advertised Benefits. Plaintiff and the members of the Classes would not have purchased the Products, or would not have paid as much to purchase them, had they known that they were, in fact, not capable of providing the Advertised Benefits. Plaintiff and the members of the Classes thus suffered monetary damages as a result of Defendant's false and deceptive representations and omissions.

7.     Defendant Maelys Cosmetics USA Inc. is a Delaware corporation with its principal place of business in Staten Island, New York. Defendant manufactures, sells, markets, and/or distributes cosmetic skin care products. Accordingly, the actions and practices giving rise to this claim of action were developed in and emanated from Defendant. Defendant uses the same trade

dress and marketing claims for sales directly through the Maelys website and third-party sellers like Amazon, Sephora and Ulta retail stores.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

9.      This Court has general personal jurisdiction over Defendant because Defendant markets and sells its Products in California.  Defendant purposefully availed itself of this forum by conducting substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant transacts significant business within this District, Plaintiff resides within this District, and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

## FACTUAL ALLEGATIONS

### A.      The Anti-Aging Industry

11.     Cosmetic skin care products are intended to be applied to the human body for cleansing, beautifying, promoting attractiveness, or altering appearance in a superficial way, without affecting the body's structure or functions.  These products are part of the so-called "anti-aging" industry; a multi-billion dollar cosmetic and skin care market, mainly targeted at women, dedicated to providing methods to maintain youth.[1]  The name itself connotes a negative stance and sentiment around aging, a natural human process that has become medicalized and pathologized in recent decades, facilitated by technological advances in anti-aging approaches.  The social preoccupation and significance of anti-aging is evident in the rise of cosmetic procedures in adults

---

[1] Emily Stewart, How the Anti-Aging Industry Turns You into a Customer for Life, Vox (July 28, 2022), https://www.vox.com/the-goods/2022/7/28/23219258/anti-aging-cream-expensive-scam.

over a certain age.  Indeed, as of 2018, 84% of adults who underwent minimally invasive cosmetic procedures and 81% of adults who underwent any cosmetic surgery were aged 35 or older.[2]

12.     Individuals, especially women, are inundated with social messaging through popular culture, social media, and advertisements perpetuating the stigma around aging and elevating youth as the ideal beauty standard.[3]  The target age for anti-aging products for women starts at around 25.[4]

13.     Everlasting youth is the ultimate, though unattainable, goal in the anti-aging industry, making it the perfect marketing strategy.[5]  The strategy has proven effective: a 2021 survey found that women spend about $225,000 on physical appearance in a lifetime, a quarter of which goes toward the face.[6]

**B.     Defendant's Products**

14.     Defendant manufactures, markets, and sells a number of purported facial and body toning Products.  The Products at issue are the B-FLAT Belly Firming Cream, B-THICC Booty Enhancing Mask, and B-TIGHT Lift & Firm Buttocks Mask.



***Figure 1***

---

[2] Rebecca Pearl & Ivona Percec, *Ageism and Health in Patients Undergoing Cosmetic Procedures*, 39 AESTHETIC SURGERY J. NP288, NP288—NP289 (2018), https://academic.oup.com/asj/article/39/7/NP288/5139659.

[3] Emily Stewart, *supra* note 20.

[4] *Id.*

[5] *Id.*

[6] *Id.*

15.     Defendant markets and sells the Products in multiple distribution channels including, but not limited to, the Maelys website, Amazon, Sephora, Target and Ulta stores. Defendant also utilizes an extensive network of online affiliates who are paid a commission for promoting the Products and driving sales to various websites controlled by Defendant.

### 1.     The Products Are Incapable of Delivering the Warranted Benefits

16.     By advertising the Products in the way that it does, Defendant promises, through purported clinically proven methods and doctored "before-and-after" images, that its Products will reduce cellulite, eliminate cellulite (*i.e.*, "no more cellulite"), deliver results similar to a "tummy tuck" surgical procedure, flatten out / reduce stretch marks and eliminate flabby skin.  However, Defendant's Products are neither clinically proven nor scientifically capable of delivering such benefits.

17.     For example, studies have proven that over-the-counter cosmetic creams cannot reduce or eliminate cellulite because they only work on the skin's surface and do not address the underlying causes of cellulite, which are fat deposits pushing through connective tissue beneath the skin.  As such, the effects of over-the-counter cosmetic creams are short-lived, and they cannot penetrate deeply enough to break down fat or alter connective tissue.[7]  Meaningful reduction of cellulite typically requires lifestyle changes or professional treatments such as laser therapy or subcision that target the structural causes beneath the skin.[8]

---

[7] https://www.researchgate.net/publication/275895699_Cellulite_An_Evidence-Based_Review

[8] Mayo Clinic Q and A: Can anything help cellulite? February 23, 2018.
https://newsnetwork.mayoclinic.org/discussion/mayo-clinic-q-and-a-can-anything-help-cellulite/

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Figure 2[9]*

18.     Similarly, while over-the-counter cosmetic creams can temporarily improve the appearance of stretch marks and flabby skin, they cannot eliminate such conditions or repair underlying structures.[10]  Long-term and noticeable improvements for both issues require professional treatments such as microneedling, laser therapy, or surgical options.

---

[9] https://www.facebook.com/MaelysCosmetics/posts/do-you-want-to-reduce-your-cellulite-our-b-tight-lift-firm-booty-mask-is-clinica/1022437305108116/

[10]https://www.researchgate.net/publication/24375828_Striae_Distensae_Stretch_Marks_and_Different_Modalities_of_Therapy_An_Update

1
2
3
4
5
6
7
8
9
10



**Figure 3[11]**

11      19.     As for the alleged replication of a tummy tuck, once again, over-the-counter skin

12  care creams only work on the skin's surface, providing temporary hydration or mild tightening

13  without addressing loose muscles, significant skin laxity, or excess fat.[12]  A tummy tuck involves

14  surgically removing excess skin and fat while tightening abdominal muscles, delivering dramatic

15  and long-lasting results.  Non-invasive treatments like radiofrequency, ultrasound therapy, or laser

16  treatments may improve skin elasticity and firmness but cannot achieve the transformative effects

17  of a tummy tuck because it is physiologically impossible.  Despite this, Defendant declares in its

18  widespread advertising that its Products defy reality, providing the benefits of a surgical procedure

19  without any of the surgery or the procedure.  Such marketing is patently false and misleading and

20  evinces Defendant's gross disdain for the truth.

22
23
24
25
26
27
28

[11]https://www.facebook.com/MaelysCosmetics/videos/261581072339263/
[12] https://pmc.ncbi.nlm.nih.gov/articles/PMC8722640/



*Figure 4*





*Figure 5*                                    *Figure 6*

20.     What's worse, Defendant markets its Products as "clinically proven" to achieve the Advertised Benefits.  That is false.  The Products have not been clinically tested or proven to reduce cellulite, eliminate cellulite (*i.e.*, "no more cellulite"), deliver results similar to a "tummy tuck" surgical procedure, flatten out / reduce stretch marks, or eliminate flabby skin with competent reliable and scientific evidence.[13]

21.     With full knowledge that the Products are not clinically proven or scientifically possible to provide the Advertised Benefits, Defendant commenced a uniform and sophisticated marketing campaign throughout the Class Period.  For example, Figure 7 below demonstrates how Defendant utilizes Facebook to display a search link on Google where consumers are asked "Do you want to reduce your cellulite?  Our B-TIGHT Lift & Firm Booty Mask is clinically proven to reduce cellulite…"  By clicking on the search link, consumers are taken to a Facebook post by Defendant with text and a video that repeats these claims and drives consumers to a sales page on Defendant's website.[14]



Facebook · MAÉLYS Cosmetics
7 reactions · 2 years ago

**Do you want to reduce your cellulite? Our B-TIGHT Lift & ...**
Our B-TIGHT Lift & Firm Booty Mask is clinically proven to reduce **cellulite** and visibly firm the skin around the booty and thighs.

***Figure 7[15]***

---

[13] https://www.ftc.gov/business-guidance/resources/health-products-compliance-guidance

[14] https://www.facebook.com/MaelysCosmetics/posts/do-you-want-to-reduce-your-cellulite-our-b-tight-lift-firm-booty-mask-is-clinica/1022437305108116/

[15] https://www.google.com/search?q=maelys+cellulite+facebook&client=firefox-b-1-d&sca_esv=f03bab0fa4fcd579&sxsrf=ADLYWILTQ65guHJKf0puTsB-scvvE3ZB1g%3A1734502005700&ei=dWZiZ8m1KsmckPIP9MPOqQk&ved=0ahUKEwiJxKW_07CKAxVJDkQIHfShM5UQ4dUDCBI&uact=5&oq=maelys+cellulite+facebook&gs_lp=Egxnd3Mtd2l6LXNlcnAiGW1hZWx5cyBjZWxsdWxpdGUgZmFjZWJvb2syBRAhGKABMgUQIRigATIFECEYoAEyBRAhGKABMgUQIRigAUiREFD8Bli7DnABeAGQAQCYYAWagAfMFqgEDOC4xuAEDyAEA-AEBmAIKoAKfBsICChAAGLADGNYEGfcCAgoQABiABBhBhDGIoFwgIFEAAYgATCAg4QLhiABBiRAhjlBBiKBcICCxAAGIAEGJECGIoFwgIGEAAYFhgewgILEAAYgAQYhgMYigXCAggQABiABBiiBMICCBAAGKIEGIkFwgIFECEYqwLCAgUQIRifBZgDAIgGAZAGCJIHAzkuMaAHnjc&client=gws-wiz-serp

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    9

22.     Finally, Defendant also attempts to inject credibility into its marketing by using false and deceptive "before-and-after" images of alleged consumers who have used the Products to drive online sales and its retail partners.  A reasonable consumer would have no reason to know or believe that the before-and-after images Defendant uses are not from the same person and/or are highly altered to give the appearance of improved results.



*Figure 8*



*Figure 9*

23.    Defendant has engaged in a massive marketing campaign, likely paying hundreds of thousands or millions of dollars in commissions to affiliates and other online influencers to publish false and deceptive before-and-after images of their "experiences" with the Products.  Defendant will even post many of these images on its own social media and sales pages, including on Amazon, Tiktok, Facebook and Instagram.  In this way, Defendant presents its Products as tried and true by other purported consumers who leave raving reviews about the efficacy of the Products, which scientifically cannot be true, thereby furthering its deceptive marketing scheme.



*Figure 10*                                   *Figure 11*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



***Figure 12***

16    24.    In view of the above, Defendant misled and deceived Plaintiff and other reasonable

17  consumers because, if they had known that the Products were not actually able to provide the

18  Advertised Benefits, Plaintiff and the members of the Classes would not have purchased the

19  Products or would have paid substantially less for them than they did.  Defendant relies on the

20  average reasonable consumer having little to no knowledge about the science and technicalities

21  concerning viable skin rejuvenation and uses buzz words like "clinically proven" in its

22  advertisements to convince unsuspecting consumers that the Products are reliable and effective.

23  Moreover, Defendant's false and deceptive advertising scheme has worked.  Sales from the

24  Products have gone viral online and have likely generated hundreds of millions of dollars through

25  e-commerce and retail channels of distribution.

26    **FEDERAL RULE OF CIVIL PROCEDURE 9(b) ALLEGATIONS**

27    25.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud

28

---

or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

26. **WHO**: Defendant made material omissions of fact in its advertising of the Products by omitting that the Products were not capable of providing the Advertised Benefits.

27. **WHAT**: Defendant's conduct was and continues to be fraudulent and deceptive because it has the effect of deceiving consumers into believing that the Products are clinically proven to reduce cellulite, eliminate cellulite (*i.e.*, "no more cellulite"), deliver results similar to a "tummy tuck" surgical procedure, flatten out / reduce stretch marks and eliminate flabby skin and thus provide extensive skin benefits.  Defendant omitted from Plaintiff and Class Members that the Products cannot deliver these benefits.  Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions.  Yet, Defendant has omitted from Maelys's labeling and advertising the fact that it cannot provide these benefits.

28. **WHEN**: Defendant omitted from the Maelys's labeling and advertising the fact that the Products are not clinically proven nor capable of reducing cellulite, eliminating cellulite (*i.e.*, "no more cellulite"), delivering results similar to a "tummy tuck" surgical procedure, flattening out / reducing stretch marks and eliminating flabby skin, continuously throughout the applicable relevant periods, including at the point of sale.

29. **WHERE**: Defendant's omissions were made throughout its own marketing materials on its website and product pages of secondhand sellers for Defendant's Products and were thus viewed by every purchaser, including Plaintiff, at the point of sale in every transaction. The Products are sold online and in brick-and-mortar stores nationwide.

30. **HOW**: Defendant omitted from the Products' labeling and advertising the fact that the Products are not clinically proven nor capable of reducing cellulite, eliminating cellulite (*i.e.*, "no more cellulite"), delivering results similar to a "tummy tuck" surgical procedure, flattening out / reducing stretch marks and eliminating flabby skin.  And as discussed in detail throughout the

Complaint, Plaintiff and Class Members read and relied on Defendant's omissions before purchasing the Products.

31.    **WHY**: Defendant omitted from the Maelys's labeling and marketing the fact that the Products are not clinically proven nor capable to reduce cellulite, eliminate cellulite (*i.e.*, "no more cellulite"), deliver results similar to a "tummy tuck" surgical procedure, flatten out / reduce stretch marks and eliminate flabby skin for the express purpose of inducing Plaintiff and Class Members to purchase the Products at a substantial price premium or more than they would have paid had they known the truth about the Products.  As such, Defendant profited by selling the Products to at least thousands of consumers throughout the nation, including Plaintiff and the Class Members.

## CLASS ACTION ALLEGATIONS

32.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

33.    Plaintiff seeks to represent a Nationwide class defined as:

> All persons in the United States who, within the applicable statute of limitations period, purchased a B-FLAT Belly Firming Cream, B-THICC Booty Enhancing Mask, and B-TIGHT Lift & Firm Buttocks Mask (the "**Nationwide Class**").

34.    Plaintiff also seeks to represent a California Sub-class defined as:

> All persons in California, who within the applicable statute of limitations period, purchased a B-FLAT Belly Firming Cream, B-THICC Booty Enhancing Mask, and B-TIGHT Lift & Firm Buttocks Mask (the "**California Subclass**").

35.    Specifically excluded from the Classes are: Defendant; Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures; entities controlled by Defendant; Defendant's heirs, successors, assigns, or other person or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors; the Judge assigned to this action; any member of the Judge's family and staff; Defendant's counsel; and Plaintiff's counsel.

36.    Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Nationwide Class and California Subclass (collectively,

the "Classes") may expand or narrow by amended complaint.

37.   **Numerosity.**  The Members of the Classes are so numerous that individual joinder of each member is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are thousands of members of the Classes.  Although the precise number of Class Members is unknown to Plaintiff at this time, it may be determined through discovery.

38.   **Commonality.**  Common questions of law and fact exist as to all Members of the Classes and predominate over any questions affecting only individual Nationwide Class or California Subclass Members.  The common legal and factual questions include, but are not limited to:

   a.   Whether Defendant made false and/or misleading statements to the public concerning the efficacy of the Products;

   b.   Whether Defendant's Products produce the results Defendant warrants;

   c.   Whether the features of the Products are sufficient to produce the results Defendant warrants;

   d.   Whether Defendant omitted material information to the consuming public concerning the actual skin care and corrective capabilities of the Products;

   e.   Whether Defendant's representations and partial representations were material to consumers;

   f.   Whether Defendant's omissions concerning the capabilities of the Products were likely to deceive a reasonable consumer;

   g.   Whether Defendant advertised the Products with the intent not to sell them as advertised;

   h.   Whether Defendant made and breached express and/or implied warranties to Plaintiff and the Classes concerning the Products' capabilities;

   i.   Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiff and the Classes; and

   j.   Whether Plaintiff and the Classes are entitled to damages.

39.   **Typicality.**  Plaintiff's claims are typical of the claims of the Members of the Classes in that the Class Members were deceived, or were reasonably likely to be deceived, in the same way by Defendant's false and misleading Advertised Benefits of the Products.  All Class Members were comparably injured by Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiff.

40.    **Adequacy.**  Plaintiff will fairly and adequately protect the interests of the Class Members.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Classes.

41.    **Predominance.**  Pursuant to Federal Rule of Civil Procedure 23(b), the common issues of law and fact identified above predominate over any other questions affecting only individual Members of the Classes.  Issues affecting the Nationwide Class and California Subclass fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

42.    **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would thus be virtually impossible for the members of the Classes to obtain effective redress on an individual basis for the wrongs committed against them.  Even if members of the Classes could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  It would also increase the delay and expense to all parties and the court system from the issues raised by this action.  A class action provides the benefits of adjudication of those issues on a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties.

### COUNT I
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of the California Subclass)**

43.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in the preceding paragraphs of this complaint.

44.    Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant.

45.     Plaintiff and other Members of the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d).  By purchasing Defendant's Products, Plaintiff and the Members of the California Subclass engaged in "transactions" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

46.     Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c). Defendant's Products are a "good" within the meaning of Cal. Civ. Code § 1761(a).

47.     Defendant's unfair and deceptive business practices, as alleged above and herein, were intended to and did result in the sale of the Products.

48.     As a direct and proximate result of Defendant's unfair and deceptive business practices, as alleged above and herein, Plaintiff and the California Subclass Members suffered injury and damages in an amount to be determined at trial.

49.     Defendant violated California's Consumer Legal Remedies Act ("CLRA") by engaging in the following unfair and deceptive business practices as alleged above and herein:

a.     Defendant violated Cal. Civ. Code § 1770(a)(5) by representing that the Products have characteristics they do not have;

b.     Defendant violated Cal. Civ. Code § 1770(a)(7) by representing that the Products are of a particular standard and quality despite being of another; and

c.     Defendant violated Cal. Civ. Code § 1770(a)(9) by advertising the Products with the intent not to sell as advertised.

50.     The CLRA was enacted to protect consumers against such practices.  The CLRA applies to Defendant's conduct because the statute covers all sales of goods to consumers.

51.     On information and belief, Defendant's unfair and deceptive business practices, as alleged above and herein, were willful, wanton, and fraudulent.

52.     On information and belief, Defendant's officers, directors, and/or managing agents authorized the use of misleading statements and material omissions regarding the Products' purported benefits as alleged herein.

53.     On October 15, 2024, prior to the filing of this complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with Cal. Civ. Code § 1782(a). The letter was sent via certified mail, return receipt requested, advising Defendant that it was in

violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.  Defendant has not taken corrective action.

54.     Plaintiff and California Subclass Members seek actual and punitive damages, restitution, reasonable costs and attorney's fees, and to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

**COUNT II**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**(On Behalf of the California Subclass)**

55.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

56.     Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant.

57.     Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 – 17210, by engaging in unfair, fraudulent, and unlawful business practices.

58.     Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct. Specifically, Plaintiff purchased her Product for her own personal use.  In doing so, Plaintiff relied upon Defendant's false representations that the Product could provide the Advertised Benefits. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

*"Unfair" Prong of the UCL*

59.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  That unfairness is determined by weighing the reasons, justifications, and motives for the business act or practice against the gravity of the harm alleged.

60.     Defendant's conduct constitutes an "unfair" business practice because, as alleged herein, Defendant engaged, and continues to engage in, false, misleading, and deceptive

advertising campaigns that mislead consumers into believing that the Products they purchased will provide the Advertised Benefits despite not being able to do so.

61.     Defendant's conduct, as alleged above and herein, was not motivated by any legitimate business or economic need or rationale, other than to maximize its revenue and the expense of consumers who sought skin regenerative benefits.  No legitimate reasons, justifications, or motives outweigh the harm and adverse impact of Defendant's conduct on members of the general consuming public.  Defendant engaged, and continues to engage, in such conduct solely to wrongfully extract monies from reasonable consumers seeking the Advertised Benefits, including Plaintiff, to which Defendant is not entitled.  Defendant could have, but has not, used alternative means of effecting its legitimate business needs, such as by omitting the Advertised Benefits entirely or discounting the Products to appropriately account for the Products' functionality.

62.     Defendant's conduct harms consumers and hurts market competition.  Defendant's conduct, as alleged herein, is immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Members of the California Subclass because it violates consumers' reasonable expectations.  If Defendant had advertised its Products in a non-misleading fashion, Plaintiff and other California Subclass Members could have considered other options for purchasing skin regenerative Products.

***"Fraudulent" Prong of the UCL***

63.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

64.     Defendant has engaged in, and continues to engage, in, fraudulent business practices by knowingly representing to consumers that the Products they purchase will provide them with skin-regenerative benefits when they do not.  Defendant's conduct deceived Plaintiff and California Subclass Members who purchased the Products in reliance on Defendant's Advertised Benefits and is highly likely to deceive members of the consuming public because, as alleged above, the Products violate consumers' reasonable expectations regarding skin rejuvenation.  Such a business practice lacks utility and functions only to maximize Defendant's profits at the expense of its customers.  The gravity of the harm to Plaintiff and other California Subclass Members, who

lost money or property by paying for the Products, far outweighs the benefit to Defendant's

conduct.

65.    Further, Defendant's fraudulent business practices will continue to mislead

consumers because it will be impossible for consumers to know whether Defendant has stopped

misrepresenting the functionality of the Products as they concern their purported skin benefits.

Accordingly, the risk of harm to Plaintiff, members of the California Subclass, and the consuming

public, is ongoing.

***"Unlawful" Prong of the UCL***

66.    A business act or practice is "unlawful" under the UCL if it violates any other law

or regulation.

67.    Defendant's business practices as alleged herein constitute violations of California's

Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA").  Specifically,

Defendant has unlawfully marketed and advertised its Products in violation of Cal. Civ. Code §§

1770(a)(5), 1770(a)(7), and 1770(a)(9), as detailed above.

68.    Defendant's business practices also constitute violations of California's False

Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et. seq.* (the "FAL"), as described below, and

provisions of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et*

*seq.*

69.    Defendant's unfair, fraudulent, and unlawful business practices, as enumerated and

explained above and below, were the direct and proximate cause of financial injury to Plaintiff and

other members of the California Subclass.  Defendant has unjustly benefited as a result of its

wrongful conduct.  Accordingly, Plaintiff and the California Subclass seek an order of this Court

that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiff and

the California Subclass; (b) disgorge all revenues obtained as a result of its violations of the UCL;

(c); and pay attorneys' fees and costs for Plaintiff and the California Subclass.

1

2

3

**COUNT III**
**Violation of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of the California Subclass)**

4      70.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations

5   contained in all preceding paragraphs of this complaint.

6      71.     Plaintiff brings this claim individually and on behalf of the California Subclass

7   Members against Defendant.

8      72.     Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof

9   Code §§ 17500, *et. seq.,* by publicly disseminating false, misleading, and/or unsubstantiated

10  advertisements regarding its Products, as alleged above and herein.

11     73.     Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and

12  has lost money or property because of Defendant's false advertising.  Specifically, Plaintiff

13  purchased her Product for her own personal use.  In so doing, Plaintiff relied on Defendant's false

14  and misleading representations regarding the Product's capability to deliver cellulite reducing and

15  other skin rejuvenation claims.  Plaintiff spent money in the transaction that she otherwise would

16  not have spent had she known the truth about Defendant's claims.

17     74.     Defendant disseminated false and misleading advertisements to increase the sales of

18  the Products.

19     75.     Defendant knew or should have known that the advertisements for its Products were

20  false and/or misleading.

21     76.     Defendant knew or should have known that consumers, including Plaintiff and other

22  members of the California Subclass, would believe that the Products were capable of providing the

23  promised skin rejuvenation benefits.

24     77.     Plaintiff and the California Subclass Members have suffered harm as a result of

25  Defendant's violations of the FAL because they paid monies for the Products that they would not

26  have purchased but for Defendant's false and misleading advertisements.

27     78.     Accordingly, Plaintiff and members of the California Subclass seek an order of this

28  Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution of Plaintiff

and other California Subclass Members; (b) disgorge all revenues obtained as a result of its violations of the FAL; and (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

## COUNT IV
### Breach of Express Warranty
### (On Behalf of the Nationwide Class and California Subclass)

79.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

80.     Plaintiff brings this action individually and on behalf of Members of the Nationwide Class and California Subclass against Defendant.

81.     Plaintiff brings this claim under the laws of the State of California.

82.     As the designer, manufacturer, marketer, distributor, and/or seller of the Products, Defendant issued an express warranty by representing to consumers that the Products would provide the Advertised Benefits when the Products are unable to because they do not possess the technological capacities necessary to produce such results.

83.     Defendant's representations were part of the basis of the bargain upon which the goods were offered for sale and purchased by Plaintiff and members of the Classes.

84.     As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Nationwide Class and California Subclass were injured because they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than Defendant represented.  Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and the Nationwide Class and California Subclass Members would not have purchased the Products or would not have paid as much as they did for them.

**COUNT V**
**Breach of Implied Warranty**
**(On Behalf of the Nationwide Class and California Subclass)**

85.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

86.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and California Subclass.

87.     Plaintiff brings this claim under the laws of the State of California.

88.     Defendant routinely engages in the manufacture, distribution, and/or sale of the Products and is a merchant that deals in such goods or otherwise holds itself out as having knowledge or skill particular to the practices and goods involved.

89.     Plaintiff and Members of the Nationwide Class and California Subclass were consumers who purchased Defendant's Products for the ordinary purpose of such products.  In the alternative, Defendant marketed the Products, and Plaintiff and Members of the Classes purchased the Products, for the specific purpose of receiving the Advertised Benefits but received far less because the Products are incapable of providing such benefits.

90.     By representing that the Products would work, Defendant impliedly warranted to consumers that the Products were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

91.     However, the Products were not of the same average grade, quality, and value as similar goods sold under similar circumstances.  Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

92.     As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Nationwide Class and California Subclass were injured because they paid money for the Products that would not pass without objection in the trade or industry under the contract description.

**COUNT VI**
**Unjust Enrichment**
**(On Behalf of the Nationwide Class and California Subclass)**

93.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations

contained in all preceding paragraphs of the complaint.

94.     Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass.

95.     Plaintiff brings this claim under the laws of the State of California.

96.     To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted by Fed. R. Civ. P. 8.

97.     Plaintiff and the Nationwide Class and California Subclass Members conferred benefits on Defendant by purchasing the Products.

98.     Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and the Members of the Classes who purchased the Products.  Retention of these monies under these circumstances is unjust and inequitable because Defendant failed to disclose that the Products were not capable of producing the Advertised Benefits, rendering the Products unfit for their intended, marketed purpose.  Those omissions caused injuries to Plaintiff and members of the Classes because they would not have purchased the Products had they known the true capabilities of the Products.

99.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the members of the Classes is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order Certifying the Nationwide Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Nationwide Class and California Subclass;

(b)     Appointing Plaintiff's counsel to represent the Nationwide Class and California Subclass;

(c)     Declaring that Defendant's conduct violated the statutes and common law referenced herein;

(d)    Finding in favor of Plaintiff, the Nationwide Class, and California Subclass against Defendant on all counts asserted herein;

(e)    Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices as set forth herein;

(f)    Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing its unlawful practices as set forth herein, directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money they are required to pay;

(g)    Awarding Plaintiff, the Nationwide Class, and California Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees.

(h)    Ordering Defendant to pay pre-judgment interest on all amounts awarded;

(i)    Providing such further relief as may be just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury of all issues so triable.

Dated: February 5, 2025

**BURSOR & FISHER, P.A.**

By:  _____/s/ L. Timothy Fisher_____
          L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
            lsironksi@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail:  greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.      I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff alleges that she resides in this District.

3.      Plaintiff alleges that she is a citizen of California and resident of Concord, California.

4.      Defendant sold its Products in California and sold skin care products to Plaintiff in this District.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Walnut Creek, California this February 5, 2025.

_/s/ L. Timothy Fisher_
L. Timothy Fisher